UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CURT CLIFT, | ) |
| Plaintiff, | ) NO.  2:14-CV-00152-LRS |
| | ) |
| | ) ORDER RE DEFENDANT'S MOTION FOR |
| vs. | ) RECONSIDERATION (ECF NO. 62); AND |
| | ) PLAINTIFF'S MOTION TO JOIN A PARTY |
| | ) (ECF NO. 70) |
| BNSF RAILWAY COMPANY, | ) |
| Defendant. | ) |
| | ) |
| | ) |

The Court held a telephonic motion hearing on August 4, 2015.  Before the Court are the following motions: Defendant BNSF Railway Company's ("BNSF") Motion for Reconsideration of Order Denying Defendant's Motion to Dismiss (ECF No. 62); and Plaintiff Curt Clift's ("Plaintiff") Motion for Joinder of Trustee Bruce R. Boyden as a Plaintiff (ECF No. 70).  At the conclusion of the argument, the Court took the matters under advisement.

This is an action for a Federal Railway Safety Act ("FRSA") claim/Occupational Safety and Health Administration ("OSHA") Complaint alleged to have been sustained by the Plaintiff. It was proceeding in this court in the ordinary course when Defendant, BNSF, discovered that Plaintiff brought this action in his own name, after having filed a petition in bankruptcy in 2011 and not disclosing this claim.  Plaintiff had filed an OSHA Complaint against BNSF about 11 weeks before filing for Bankruptcy in 2011. On December 24, 2014, BNSF filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), contending that the Plaintiff did not have prudential standing.  The Court denied BNSF's motion to dismiss and BNSF filed a motion for reconsideration of that order, now before the court.  BNSF contends that Plaintiff is not the real party in interest and it would be

ORDER - 1

futile to join the Trustee because Plaintiff's decision to bring this case in his own name is not based on understandable mistake.  Plaintiff has filed a Motion for Joinder of the Trustee in Bankruptcy as Plaintiff, the real party in interest.

**A.    <u>Plaintiff's Bankruptcy</u>**

The filing of a bankruptcy petition creates an estate that generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Any causes of action that accrue to the debtor prior to the filing of the bankruptcy petition are property interests included in the estate.  *Sierra Switchboard Co. v. Westinghouse Elec. Corp. (In re Sierra Switchboard*), 789 F.2d 705, 707 (9th Cir.1986) (citations omitted).  A cause of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the estate.  *Cusano v. Klein,* 264 F.3d 936 (9th Cir. 2001)*.* After a claim becomes part of the bankruptcy estate, only the bankruptcy trustee, as representative of the estate, has the authority to prosecute or settle the cause of action.  See 11 U.S.C. § 363; Fed R. Bankr.Pro. 9019.

There is no dispute in this case that Plaintiff's claim against Defendant accrued prior to the filing of his bankruptcy petition. When Plaintiff commenced his bankruptcy case, this claim became the property of the bankruptcy estate. Therefore, any claim by Plaintiff against Defendant arising out of the OSHA Complaint regarding Plaintiff's FRSA retaliation claim against BNSF filed on April 11, 2011, no longer belongs to Plaintiff. Rather, it is the property of the bankruptcy estate.

In its Motion to Dismiss, Defendant first argued that this suit should be dismissed because of Plaintiff's apparent lack of prudential standing. While there is much confusion surrounding the distinction between the doctrine of standing and the principle of the real party in interest, it is clear that this suit presents an issue involving the latter.

Generally, standing involves a determination of "whether the plaintiff can show an injury in fact traceable to the conduct of the defendant."  *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Because Plaintiff was the individual who suffered the injury alleged in the Complaint, he meets the requirements of standing. In

contrast, the real party in interest principle requires that "Every action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). This principle is a means to identify the person who possesses the right sought to be enforced.  *See Karras v. Teledyne Industries, Inc.*, 191 F.Supp.2d 1162 (S.D.Cal. 2002).  Plaintiff is not the real party in interest because, upon the filing of his bankruptcy petition, this claim became the property of the bankruptcy estate and now can only be maintained by the bankruptcy trustee.

**B.    Federal Rule Civil Procedure Rule 17**

In addition to requiring all actions to be prosecuted in the name of the real party in interest, Rule 17(a) provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a).

While Fed. R. Civ. P. 17(a)(3) bars dismissal until "a reasonable time has been allowed for the real party . . . to ratify, join, or be substituted ..." this clause does not apply when the determination of the right party to bring the action was not difficult and when no excusable mistake was made.

When determination of the correct party to bring the action was not difficult and when no excusable mistake was made, the last sentence of Rule 17(a) is inapplicable and the action should be dismissed.  6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1555 (1990) ("Wright & Miller"); *see also U.S. for Use and Benefit of Wulff v. CMA, Inc., 890 F.2d 1070, 1074 (9th Cir.1989); Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir.1997) (noting that the district court retains discretion to dismiss an action where there was no reasonable basis for naming an incorrect party); *Whitcomb v. Ford Motor Co.*, 79 F.R.D. 244, 245 (M.D.Pa.1978)(noting that Rule 17 contemplates dismissal of an action not prosecuted by the real party in interest). Further, this portion of Rule 17(a) "should be

applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." 6A Wright & Miller § 1555 at 415; *Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc.*, 164 F.R.D. 1, 3 (E.D.N.Y.1995).

## C.    Factual Background

### 1.    Plaintiff's Version of Facts

On June 30, 2011, Clift filed for bankruptcy, mistakenly omitting he had filed a complaint with OSHA. (ECF 44-2 at 30.) Clift asserts his omission was due to his then-attorneys failing to explain he had a claim that needed to be disclosed.  While answering interrogatories, Clift told his present attorney Mr. Kaster he had filed for bankruptcy. (ECF 52 ¶ 5.) Mr. Kaster explained the claim must be disclosed, and Clift tried repeatedly to reach his former bankruptcy attorney – Robert Hahn ("Hahn").  When Hahn failed to respond, Clift sought another attorney to re-open his bankruptcy and amend his schedule.

### 2.    BNSF's Version of Facts

a.    **Pre-Bankruptcy**

On April 11, 2011, approximately 11 weeks before the Clifts' June 30, 2011 Bankruptcy filing, Clift filed an "OSHA Complaint" regarding his FRSA retaliation claim against BNSF with the DOL, an administrative exhaustion condition precedent to filing this lawsuit. The lengthy OSHA Complaint alleging a FRSA violation was signed by Clift's former attorneys, Jeff Dingwall and Charles Collins, and requested that BNSF be ordered to pay Clift all compensatory damages, and punitive damages (up to $250,000), available under the FRSA.  ECF No. 75-1.

The DOL sent an April 13, 2011 letter to Clift's home acknowledging receipt of the retaliation claim and providing information on the process to pursue a FRSA claim, including Clift's option of filing a complaint in federal district court if  OSHA failed to issue findings within 210 days.  Copies of the FRSA statute and regulations were

ORDER - 4

enclosed (which describe compensatory and punitive damages available under the FRSA). Clift received the letter, remembers at least certain portions of it, and acknowledges that "anytime you get a letter from the Department of Labor in the mail one would take that seriously." Clift Dep. at 15:19-16:6, 29:25-30:16 (acknowledging the letter told him he had the potential to file in district court).

On May 24, 2011, still pre-Bankruptcy, Clift's then-attorney submitted a settlement demand to OSHA on Clift's behalf, demanding BNSF's payment of $20,000 for alleged mental anguish, additional payment for attorneys' fees, and other relief. Thomas Decl. ¶¶ 9, 11, Exhs. 8, 10. Clift does not deny authorizing his attorneys to make this demand on his behalf. Clift Dep. at 20:8-21:8.  On June 22, 2011, an OSHA investigator interviewed Clift at OSHA's office. Clift recalls that the investigator read "some stuff ' to him.  Clift Dep. at 31: 1-14; Thomas Decl. ¶¶ 10-11, Exhs. 9-10. The investigator's notes reflect that both of Clift's then-OSHA attorneys were present, she described the OSHA Complaint as a "case" in a few places, described the interview process, and explained that Clift could subject himself to criminal charges if he intentionally provided false information during a federal investigation, and that the interview lasted slightly under 1.5 hours. Clift gave substantial information in that interview. *See id.*

### b.    Bankruptcy Filing

On June 30, 2011, about 11 weeks after filing the OSHA Complaint and receiving the DOL letter, and eight days after his OSHA interview, the Clifts filed for Bankruptcy through attorney Robert Hahn III. ECF No. 44-2 at 11-12. According to the Clifts' testimony (which was limited due to some claims of spousal privilege), before the Bankruptcy, Clift did not tell his wife about the OSHA Complaint. Candace Dep. at 5:22-7:22.2.  As part of Clifts' intake and retention process, Hahn provided the Clifts with detailed intake documents, including a notice asking them to provide "[d]ocumentation of any personal injury action not yet settled" and Client Information Worksheets asking them to disclose any "[o]ther contingent and unliquidated

claims" they had and whether they had sued anyone in the last year. Clift did not disclose to Hahn the OSHA Complaint/FRSA claim against BNSF despite signing the worksheets purportedly under penalty of perjury.  See Hahn Dep. at 5:16-7:9, 12:1-16; Thomas Decl. ¶ 5, Ex. 5 at 52-76. Although each were asked to do so, Mrs. Clift- but not Clift - also signed Hahn's Bankruptcy Engagement Agreement, which emphasized the importance of listing all assets on the bankruptcy petition and requested initialing by each of a disclosure stating "I/we do not have any cause of action for personal injury, wrongful discharge or any other right to sue someone for money because they have caused a loss to myself/ourselves." Thomas Decl. ¶ 5, Ex. 5 at 77-85. Mrs. Clift stated in her deposition that she was unaware of her husband's OSHA Complaint/FRSA claim.

Mrs. Clift testified that she signed the Agreement and initialed the disclosures on behalf of herself and Clift, but she did not ask Clift if he had anything to disclose.  *Id.* at 15:21-17:3. If she had been aware of the OSHA Complaint, however, she is "sure" that she would have asked Hahn if it needed to be disclosed. *Id*. at 17:4-19.  The Clifts did not disclose the OSHA Complaint/FRSA claim in the Bankruptcy.  Instead, Clift answered "None" to a question about "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." *Id.* at 38, 43. Clift now admits that he should have delved more into this at the time of the Bankruptcy. Clift Dep. at 44:1-16.

On July 27, 2011, a 341 Meeting of Creditors occurred.  The Clifts affirmed under oath that they had a prior bankruptcy; had listed all of their assets on their bankruptcy schedules; had carefully reviewed and were personally familiar with all the information on their bankruptcy filings; and that there were no errors or omissions that they wanted to bring to the Trustee's attention. Thomas Decl. 4, Ex. 4 at 26:12-27:25; ECF No. 75-2. The Trustee asked "And do either of you have any claim against any third party, such as an automobile accident or personal injury claim?" The Clifts each answered "No." *Id.* at 28:5-9. Clift does not dispute providing that answer; he instead asserts that he thought the OSHA Complaint was a "complaint" not a "claim." Clift Dep. 39:13-40:13.

On July 18, 2011, the Clifts filed amended schedules on July 18, 2011, but again failed to disclose the OSHA Complaint. See ECF No. 44-3.  The Trustee then entered a Report of No Distribution and the Clift's debts were subsequently discharged. ECF No. 75-3 at 33; ECF No. 44-4.

### c.    Post-Bankruptcy/Pre-Federal (Current) Lawsuit

Clift noted in his deposition that he discussed his Bankruptcy and failure to disclose the OSHA Complaint with OSHA attorney Collins and that Collins told him Clift needed to do something to "fix" his failure to disclose the claim against BNSF in the Bankruptcy.  E.g., Clift Dep. at 23:9-25:14, 73:24-76:20, 78:1-78:13, 82:3-15, 85:20-88:13. Clift testified Collins told him this probably during their last conversation before, apparently due to illness, Collins referred Clift to the Nichols Kaster firm to continue to pursue the FRSA claim. *E.g., id.* at 78:13- 79:10. Nichols Kaster (not Collins) represented Clift at the time he filed this Complaint in December 2013. See ECF No. 1 at 11. Despite knowing he needed to do something to fix the omissions in his Bankruptcy before he filed the present lawsuit, Clift took no action; he did not even ask Collins what he needed to do to fix it. Clift Dep. at 83:18-84:11, 85:20-87:23, 90:12-23. Clift offered no excuse for ignoring his attorney's advice to fix his Bankruptcy omissions, claiming he thought the issue somehow was "going to be repaired." *Id*. Clift initially testified that he talked to Nicholas Thompson about this failure near the start of Nichols Kaster's representation of him, but then he testified that he couldn't recall exactly when he first discussed it with his present attorney Nichols Kaster. *See id.* at 83-85.

Both Clift and Attorney Thompson declared that after BNSF brought its Motion to Dismiss, each had repeatedly tried to contact bankruptcy attorney Hahn (regarding the procedure for re-opening Clift's bankruptcy) and that Hahn did not respond to calls for over a month.  Attorney Thompson stated that due to the unresponsiveness he advised Clift to seek out a new bankruptcy attorney.  ECF Nos. 51 at 1-2; ECF No. 52 at 2.

Attorney Hahn's records reflect that Attorney Thompson emailed Hahn on September 29, 2014, asking to speak with him, and that Hahn sent him a detailed response on October 22, just over three weeks later, describing how to correct the failure, stating he was willing to reopen the bankruptcy, explaining fees, and the need for a fee agreement.  Thomas Decl. ¶ 5, Ex. 5 at 49-51; Hahn Dep. 39:13-41:8.

**D.    Motion For Reconsideration of Defendant's Motion to Dismiss**

A motion for reconsideration may be properly brought only to present new facts or new law that were not reasonably available to the moving party at the time the motion was originally briefed and argued. Additionally, those new facts or law must be sufficient to cause the court to alter its prior decision. *See Garber v. Embry–Riddle Aeronautical Univ.*, 259 F.Supp.2d 979, 981 (D.Ariz.2003), *citing All Hawaii Tours Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648–649 (D.Haw.1987), aff'd in part, rev'd in part on other grds., 855 F.2d 860 (9th Cir.1988) and *In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d 528, 542 (9th Cir.1990).

On May 22, 2015, this court authorized limited depositions (ECF No. 91) for the sole purpose of ascertaining evidence relating to issues surrounding Mr. Clift's decision to sue BNSF in his own name, the Clifts' failure to disclose the claim against Defendant in their bankruptcy proceeding, and Mr. Clift's allegations of "understandable mistake." Hence, BNSF argues its Motion to Dismiss (ECF No. 43) is converted to a summary judgment motion, and should be granted if the movant shows that there is no genuine dispute as to any material fact.  BNSF further alleges that Clift' s declaration testimony was false and cannot create a genuine dispute of material fact to avoid summary judgment under *Kennedy v. Allied Mut. Jns. Co.*, 952 F.2d 262,  266 (9th Cir. 1991).

The court will reconsider Defendant's motion to dismiss in light of the new facts (from depositions authorized on May 22, 2015) that are sufficient to cause the court to alter its prior decision.

**E.    Discussion**

It is necessary for this Court to determine whether or not Plaintiff was acting in good faith when he filed this action in his own name. If Plaintiff did not make an honest and understandable mistake when he filed this action in his own name, this Court will not allow substitution of the real party in interest.  Fed.R.Civ.P. 17.

In evaluating the evidence relevant to the issue of whether or not Plaintiff filed this Complaint in good faith, the timing of particular events and Clift's participation in the lengthy OSHA Complaint just 11 weeks prior to filing Bankruptcy, plays a crucial role.  On **April 11, 2011**, prior to his Bankruptcy,  Plaintiff alleged a FRSA violation requesting that BNSF be ordered to pay Clift all compensatory damages, and punitive damages (up to $250,000).  On or about **April 13, 2011**, the DOL sent a letter to Clift's home acknowledging receipt of the retaliation claim and providing information on the process to pursue a FRSA claim, including Clift's option of filing a complaint in federal district court if  OSHA failed to issue findings within 210 days.  On **May 24, 2011**, still pre-Bankruptcy, Clift's then-attorney submitted a settlement demand to OSHA on Clift's behalf, demanding BNSF's payment of $20,000 for alleged mental anguish, additional payment for attorneys' fees, and other relief.  On **June 22, 2011**, an OSHA investigator interviewed Clift at OSHA's office.  Both of Clift's then-OSHA lawyers were present, and the investigator described the OSHA Complaint as a "case."   A week later, on **June 30, 2011**, Clift filed for Bankruptcy.

Following his Bankruptcy filing and before the instant lawsuit was filed, Clift was told by one of his attorneys that he needed to "fix" it.  When he and another one of his attorneys contacted his original bankruptcy attorney (Hahn) about re-opening his bankruptcy to disclose the claim, he still did nothing despite  Hahn's willingness to represent Clift and perform the work three weeks following his inquiry into fixing the omission.   It is remarkable that, given Clift's legal representation, substantial involvement with the process and awareness of his claims, including monetary requests, Plaintiff now claims it was an honest and understandable mistake to have not disclosed his claim and to sue in his own name.

When determination of the correct party to bring the action was not difficult and when no excusable mistake was made, the last sentence of Rule 17(a) is inapplicable and the action should be dismissed. 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1555 (1990) ("Wright & Miller"); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc*., 106 F.3d 11, 20 (2d Cir.1997) (noting that the district court retains discretion to dismiss an action where there was no reasonable basis for naming an incorrect party); *Whitcomb v. Ford Motor Co.*, 79 F.R.D. 244, 245 (M.D.Pa.1978)(noting that Rule 17 contemplates dismissal of an action not prosecuted by the real party in interest). Further, this portion of Rule 17(a) "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." 6A Wright & Miller § 1555; *Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc*., 164 F.R.D. 1, 3 (E.D.N.Y.1995).

The parties do not dispute that the bankruptcy trustee is the real party in interest. But because Clift cannot show understandable mistake that excuses his failures to disclose the OSHA Complaint in the Bankruptcy or decision to sue BNSF in his own name, this lawsuit must be dismissed. *Accord Wulff v. CMA, Inc*., 890 F.2d 1070, 1074-75 (9th Cir. 1989); *In re PPA Prods. Liab. Litig*., 2006 WL 2136722 at *3-4 (W.D. Wash. 2006) (failure to schedule claims/read petition before signing not "understandable mistake" despite Plaintiff's alleged cognitive impairment); *Van Sickle v. Fifth Third Bancorp*., 2012 WL 3230430 at *3 (E.D. Mich. 2012) (Rule 17(a)(3) "inapplicable" as trustee's exclusive standing to pursue claims belonging to bankruptcy estate is "clearly established").

Absent understandable mistake, Rule 17(a)(3) does not apply - joinder or substitution of the Trustee would not relate back to date of the Complaint and any FRSA claim is therefore time barred. ECF No. 87. The Court also finds Plaintiff's argument relating to a post-bankruptcy FRSA claim being timely is unpersuasive. Any purported post-bankruptcy retaliation claim could not survive as it could not have been asserted in

ORDER - 10

Clift's pre-bankruptcy OSHA Complaint and Clift could not have satisfied
administrative prerequisites or exhausted administrative remedies.[1]

The Court finds that given the undisputed facts relied upon herein, Plaintiff cannot
establish an understandable mistake linked to his failure to disclose his claim of
$250,000, which became a $20,000 settlement demand just weeks prior to Clift's
Bankruptcy filing.   Clift also was not pro se (acting alone) but represented by several
different attorneys since his claim arose.

### F.    **Judicial Estoppel**

"Judicial estoppel" is an equitable doctrine that precludes a party from gaining an
advantage by asserting one position, and then later seeking an advantage by taking a
clearly inconsistent position. *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d
778 (9th Cir. 2001).  Even if this Court allowed substitution of the trustee in for the
Plaintiff, it would have to invoke judicial estoppel to protect the integrity of the
bankruptcy process.   The debtor, once he institutes the bankruptcy process, disrupts the
flow of commerce and obtains a stay and the benefits derived by listing all his assets.
The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express,
affirmative duty to disclose all assets, including contingent and unliquidated claims.

The Ninth Circuit in *Hamilton*  voiced complete agreement with the Fifth Circuit's
analysis in *In re Coastal Plains* when the Fifth Circuit said, "[I]t is very important that a
debtor's bankruptcy schedules and statement of affairs be as accurate as possible,
because that is the initial information upon which all creditors rely." *In re Coastal*

---

[1]An FRSA claim must be made by filing a complaint with the Secretary of Labor
not later than 180 days after the alleged violation. 49 U.S.C. § 20109(d). After a
preliminary order is issued, either party may then cause the matter to be referred to an
ALJ. 29 C.F.R. §§ 1982.106(a), 1982.107. An ALJ decision is the final order of the
Secretary unless a petition for review is filed within 10 business days. Id. § 1982.110(a).
If a final order has not issued within 210 days after the complaint's filing, an original
action may be brought for de novo review in federal district court. 49 U.S.C. §
20109(d)(3); 29 C.F.R. § 1982.114(a). 15 days earlier, a complainant must file an
administrative notice of intent to do so. 29 C.F.R. § 1982.114.

*Plains,* 179 F.3d at 208.  The *Coastal* court further defined the essence of judicial estoppel in this bankruptcy context:

> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id*. (alteration in original) (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)).

The Ninth Circuit discussed the doctrine of judicial estoppel in *Ah Quin v. County of Kauai Dept. Of Transp.*, 733 F.3d 267 (9th Cir.2013).  In that case,  Kathleen Ah Quin filed a discrimination lawsuit against the County of Kauai Department of Transportation in which she sought approximately $350,000. She later claimed that her damages were $800,000, and in response to the County's interrogatories she told the County she was entitled to $6,000,000. When Ah Quin filed for bankruptcy to get relief from less than $80,000 in debt, she told the bankruptcy court there were no "suits or administrative proceedings to which [she] is or was a party" within the year preceding commencement of her bankruptcy, even though her discrimination suit was ongoing.  The magistrate judge dismissed Ah Quin's discrimination claim against the County on the basis of judicial estoppel finding Ah Quin's failure to disclose the discrimination lawsuit during the bankruptcy proceedings was not based on mere inadvertence or mistake.  The lower court also relied on *Hamilton* to dismiss the undisclosed discrimination claim.

On appeal, the Ninth Circuit vacated and remanded the case finding that the district court applied the wrong legal standard.  The appellate court  concluded that Plaintiff's bankruptcy filing was inadvertent.  In particular, it found the muddled colloquy was insufficient to hold, at the procedural stage of that case, that Plaintiff's

ORDER - 12

affidavit was a sham.  In her affidavit Plaintiff swore that, when she reviewed the bankruptcy schedules, she did not think that she had to disclose her pending lawsuit because the bankruptcy schedules were "vague."   The dissent, however, found that Plaintiff's statement was false.   The dissent argued that, after the colloquy with the bankruptcy court concerning her husband's possible legal claims, Plaintiff must have known that she was required to disclose her own claim.

In the instant case, the Court finds that Clift's awareness of his undisclosed claim appears to have been stronger than the Plaintiff's in Ah Quin.  Clift's suggestion that he did not know better or that one or more of his attorney's failed to catch or fix the nondisclosure is insufficient to withstand application of the doctrine of judicial estoppel. *See Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1159 (10th Cir. 2007)  ("[Debtor's] assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application of the doctrine.").  The Court finds that, viewing all the undisputed facts in a light most favorable to Plaintiff, Clift's assertion that his omission was due to his attorneys failing to explain he had a claim that needed to be disclosed, is not an understandable mistake.  The Court ispersuaded by the following undisputed facts:

- Clift was represented by several attorneys over the course of his claim
- Clift was personally involved and interviewed for the FRSA claim/OSHA Complaint for compensatory  damages, and punitive damages (up to $250,000)
- Clift received written communications in the mail from DOL regarding his claim
- Clift was told he needed to fix the nondisclosure
- Clift's original bankruptcy attorney offered to reopen his case
- The Trustee asked Clifts:  "And do either of you have any claim against any third party, such as an automobile accident or personal injury claim?" The Clifts each answered "No."

ORDER - 13

- On May 24, 2011, still pre-Bankruptcy, Clift's then-attorney submitted a settlement demand to OSHA on Clift's behalf, demanding BNSF's payment of $20,000 for alleged mental anguish, additional payment for attorneys' fees, and other relief.   Clift does not deny authorizing his lawyers to make this demand on his behalf.

In deciding Defendant BNSF's Motion to Dismiss, the Court agrees with Defendant that converting the Motion to Dismiss into a Motion for Summary Judgment is warranted based on the depositions which were ordered after the filing of the motion to dismiss.  The Court finds that the undisputed facts, however, allow summary judgment to be entered in favor of Defendant BNSF on its motion to dismiss.

Based on the foregoing, the Plaintiff's Motion for Joinder, is denied, in light of the dismissal of the case.

Accordingly**, IT IS HEREBY ORDERED** that:

1.  Defendant BNSF Railway Company's ("BNSF")'s Motion for Reconsideration of Order Denying Defendant's Motion to Dismiss, ECF No. 62, is **GRANTED.**  The Scheduling Order, ECF No. 34, entered on June 9, 2014 is **VACATED**.

2.  Plaintiff's Motion for Joinder of Trustee Bruce R. Boyden as a Plaintiff, **ECF No. 70**, is **DENIED**.

3.  Defendant's Motion to Expedite Hearing on its Motion for Reconsideration, **ECF No. 64**, is **DENIED as MOOT**.

4.  The District Court Executive is directed to enter judgment in favor of Defendant consistent with this order.

5.  The District Court Executive is directed to **CLOSE FILE**.

DATED this 5th day of August, 2015.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 14