**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CURT CLIFT,

    Plaintiff-Appellant,

v.

BNSF RAILWAY COMPANY,

    Defendant-Appellee.

No. 15-35695

D.C. No. 2:14-cv-00152-LRS

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted June 4, 2018
Seattle, Washington

Before: BYBEE and N.R. SMITH, Circuit Judges, and ANTOON,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

Curt Clift appeals from the dismissal of his Federal Railway Safety Act claim. We affirm.[1]

1. <u>Federal Rule of Civil Procedure 17.</u> On appeal, both parties cite a de novo standard of review, but we have held that we review "Rule 17 determinations for abuse of discretion." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017). It is clear from the order dismissing Clift's case that the district court considered all of the record evidence presented to it and held that Clift was not entitled to the protections of Rule 17(a)(3), because "determination of the right party to sue" was not "difficult" and Clift's mistake was not "understandable." *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989). To the extent the district court applied a summary judgment standard in its analysis, it gave Clift more benefit of the doubt than he was entitled by viewing the facts in the light most favorable to him. The district court relied on the following evidence in reaching its conclusion.

- Clift participated in his "OSHA Complaint just 11 weeks prior to filing Bankruptcy."
- Clift requested in the OSHA proceeding "that BNSF be ordered to pay . . . all compensatory damages, and punitive damages (up to $250,000)."
- OSHA interviewed Clift in the presence of his attorneys regarding his claim one week prior to filing bankruptcy.

---

[1] The motion for judicial notice is denied.

2

- Prior to filing his complaint in federal court, "Clift was told by one of his attorneys that he needed to 'fix'" his bankruptcy filings to correct the failure to disclose the claim at issue in this case.
- Although Clift's original bankruptcy attorney expressed a "willingness to represent Clift" in fixing the problem in the bankruptcy court, Clift did nothing to fix the omission at that time.

This evidence is sufficient to affirm the district court's determination that the protections of Rule 17(a)(3) did not apply, because Clift's mistake in filing the claim in his own name was not honest and understandable.

Moreover, we cannot, as Clift requests, remand for the district court to substitute the bankruptcy trustee as the real party in interest. After the district court's judgment in this case, the bankruptcy court closed Clift's bankruptcy case and discharged the trustee, resulting in the abandonment of any unadministered property—including the claim against BNSF that Clift had belatedly disclosed on his amended schedules. *See* 11 U.S.C. § 554(c); *Dzakula v. McHugh*, 746 F.3d 399, 400 & nn.1–2 (9th Cir. 2014).

2. <u>Judicial Estoppel.</u> Judicial estoppel is an equitable doctrine, so we review the district court's ruling for an abuse of discretion. *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). "Although judicial estoppel is 'probably not reducible to any general formulation of principle,'" we have identified three factors that "typically inform the decision whether to apply the

3

doctrine in a particular case." *See id.* "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (quoting *New Hampshire*, 532 U.S. at 750)). Third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire*, 532 U.S. at 751)).

Each of these factors was clearly met. In 2011, Clift represented to the bankruptcy court that he did not have any claims (when he actually did), and the bankruptcy court relied on Clift's omission in granting him a discharge on September 28, 2011. On December 19, 2013, Clift filed this suit in the district court, raising a retaliation claim incurred in 2010 (before his bankruptcy was filed). Judicial acceptance of this inconsistent position would create the perception that the bankruptcy court was misled. Only when the bankruptcy was disclosed in discovery and BNSF filed a motion to dismiss did Clift move to reopen his bankruptcy and solve the problem he had created. Absent "inadvertence or

4

mistake," the fact that Clift reopened the bankruptcy case and amended his schedules is "irrelevant to the analysis of judicial estoppel." *Id.* at 273. For the reasons articulated above, the district court properly rejected Clift's claim of inadvertence or mistake.

**AFFIRMED.**